Chief Judge Gregory, you may please the court. Mr. Williams is serving an unconstitutional sentence because he does not have three prior convictions that qualify as violent felonies for purposes of the Armed Career Criminal Act. First, Virginia common law robbery as this court held in United States v. White does not qualify as a violent felony for purposes of ACCA. Second, Virginia's firearm offense does not require proof of firearm use against a person, against another person, or intentional use or display against another person. Starting with robbery, this case is controlled by this court's decision in United States v. White. The first step in applying the categorical approach is to identify the elements of the state offense at issue or a federal offense if the federal offense is at issue. In response to a certified question from this court, the Virginia Supreme Court identified the elements of Virginia common law robbery as it has done for the last several centuries. It is defined as the taking with the intent to steal the personal property of another from his person's or presence against his will by violence or intimidation. Virginia Supreme Court held that these elements could be satisfied by non-violent means. The court is bound by the Virginia Supreme Court's interpretation of state law. Counsel, is the only way that common law murder in Virginia, I mean common law robbery, I'm sorry, in Virginia can be committed in a way that is not a crime of violence is through the threat of sodomy? That's correct, yes. But as the court said in White, this court is bound by the Virginia response to this court's opinion in United States versus White is to point to the punishment statute, Virginia code 18.2-58. The problem is that the Virginia Supreme Court has already said what the elements of the offense are. And those elements do not include the words in 18.2-58. And so the government starts in the wrong place. As we've said, you cannot look to the punishment statute to determine the elements of the offense. Counsel, is that, is your position that, you know, you can never look at a penalty provision to establish the elements of an offense or just that in this case you can't? Of course the court can. I believe the court in Mathis said that following Apprendi and Alain, of course, there is a constitutional Sixth Amendment definition of elements and that can help courts in identifying the elements of the offense. But in this case, well before Alain and Apprendi, but even now, the elements of Virginia robbery are not defined by reference to the words in 18.2-58. That's for a number of reasons. One, the government mischaracterizes the punishment statute as a mandatory minimum statute when the punishment under that provision can be entirely suspended by the trial court. But secondly, they start the divisibility question without looking first to the elements as defined by the Virginia Supreme Court. And so they start the divisibility inquiry by not looking at the elements that this court said in white it was bound by, by principles of federalism. As we all know that the Supreme And so there is a step here that the government cannot get around. And that is what are the elements of this offense under Virginia common law robbery. And those are defined by Virginia state law and by the highest court of this commonwealth to include a commission by nonviolent means. And that ends the issue. As we've said, there is no way to get around that fact. And the government cannot point to the punishment statute when the highest court has said you do not look to that punishment statute to define the elements of Virginia common law. I will be happy to move on to the second set of convictions here unless the court has any other questions about Virginia common law robbery. Mr. Williams also has three convictions for violating Virginia's firearm offense, 18.2-53.1. That is a statutory offense, not an offense defined by common law. If I can say one more word about Virginia common law robbery, the way it's charged is simply, and it's charged now and charged at the time that Mr. Williams was prosecuted, is simply by using the word robbery, that Mr. Williams did rob a victim. And that word robbery incorporates those elements of the common law that the Virginia Supreme Court identified. So there is no accusation of divisible words. The charging of robbery is simply to say that the defendant robbed a victim. There is no alternative phrasing or various ways that individuals can be charged with that offense. But moving on to the firearm offense, this is an extremely broad offense that is very different from some other offenses that require the use of a firearm against a victim. The words of this offense, and again, this is where we start the categorical approach, is simply that it prohibits the use of a firearm during a predicate offense or the display in a threatening manner during a predicate offense. None of those words require, well, first starting with use, I would suggest that these are alternative means of, this is not a divisible offense in that if you look at the way that Virginia charges it, they do not require the charging document to say either use or display against a person. And in fact, not that we believe that this is governed by the modified categorical approach, we've put in Mr. Williams' charging documents and several of his charges include both use and display against a victim, display in a threatening manner, not against a victim. But first, with respect to the word use, Virginia courts define that the same way that the federal courts define it in the context of 924C. That is extremely broadly, it simply means to employ as to any Counsel, if I could ask you a question on this part of the issue. I asked you earlier if the only way of committing common law robbery in Virginia that is not a crime of violence is through the threat of sodomy, and you said yes, which is what I understood the case to be too. As I understand it, the Virginia Davis case requires to be convicted of this offense that you prove both the primary aspect, the use of a firearm, and then the elements of the predicate crimes, whichever one is being talked about. That's correct. And absolutely, the elements of this fence are charged in connection with the predicate. And that's my friend's major argument, that when, even if individually these elements don't satisfy the force clause, that when you put them together, that they necessarily satisfy the force clause. And the problem is that there is nothing in this statute that requires the use of a firearm to be used to commit the robbery. There is nothing that requires. But if, I'm sorry, if I could just finish the point, but if robbery is a crime of violence, just hear me out. Let me finish my question, please. If but for the threat of sodomy, robbery would be a crime of violence. Stoeckling would tell us that, you know, our Dinkins case would tell us that. And we have this Virginia law as a way of committing common law robbery that takes that away. Why wouldn't, why doesn't the predicate use of the requirement of the first part of the statute exclude the only way you could otherwise commit common law robbery and it not be a crime of violence? Two reasons. First, the use of a firearm doesn't have to be used in the direction of a person. And secondly, there's nothing in the statute that requires the use of the firearm to be related to the predicate offense. I may have some differences on that, but taking that as true, it's common law robbery we know, absent this threat of sodomy, is a crime of violence. And whether or not the first part of the statute is enough by itself to be a threat of violence, it excludes the one thing, the one circumstance in the way you can commit common law robbery that wouldn't be a crime of violence. And that's where we part ways. Doesn't the first part of it preclude threatening someone with sodomy to committing robbery by threatening someone with sodomy? Not at all. You don't think the first part of the statute precludes that? No, and I can give you a concrete example. Individual trespasses on a victim's property and uses a firearm against a door that's locked, that's in the door, and then commits the taking through a threat of accusing the victim of engaging in an unnatural act. There is nothing that precludes those set of circumstances under the statute because the use of the firearm doesn't have to have any relation to the predicate. It doesn't have to be while they're committing the robbery, and the robbery has to be taking property from the person. So I don't see how using it to break into a door and then later threatening sodomy is going to work. This again comes down to Virginia law, and Virginia law defines the temporal space of Virginia robbery, which occurs from the moment a person trespasses on a victim's property to the time they leave. And so, for example, if an individual commits a robbery and leaves with the property and is confronted by a policeman and points the firearm at himself and says, back away or I will shoot myself, that also would satisfy the terms of these. I got to say, on that one, I will say that just as kind of a practical common sense matter, I am struggling to think of a case that, you know, is more than just really purely hypothetical where someone is committing robbery by way of a threat of a charge of sodomy and using or displaying a gun, but it's not a crime of violence. And one of the reasons is because I would imagine that if you are in the process of taking property by intimidation directed at the person and you are displaying a gun, whether you are threatening to shoot yourself or scratching your nose or whatever, that seems like it would carry a pretty strong implicit threat of violence. You're displaying a gun while you are in the process of intimidating someone. How is that not threatening? Well, it may be threatening to a reasonable person. That's not sufficient to satisfy the force clause. The threat has to be intentional and directed at another person. But secondly, the question is, I think the predicate of your question is that the firearm must be displayed during the taking. And that's not what Virginia law requires. Well, it's got to be displayed in a threatening manner. And so to use the gun to gain entry isn't, maybe your argument is, isn't threatening, isn't using it to gain entry, and maybe it is in the connection with the temporal aspect of the robbery, but that's not in a threatening manner. To be clear, the statute's in the disjunctive, meaning you can prove either use or written display. And so an individual can meet the elements of the offense simply by using the firearm at some point that is not related to the taking, such as breaking into a locked door. All right. So if someone breaks in, again, we're not in the realm of deciding how this case will most likely occur. That's the residual clause. That's when the judges get the opportunity to decide what is most likely to happen. We're just looking at the elements. And again, the elements themselves require no relation between the use of the firearm and the actual predicate offense. And so I gave the example from Smith versus United States, which is a case about 924C. And in that case, the individual was exchanging a gun in use during and in relation to a predicate offense. Is that a use? And the court said, well, it is a use. You're bartering. And it's in relation to the predicate offense, the trading of the drugs. And in dissent, Justice Scalia says, well, if you're going to define use that way, then what about using a gun to scratch your head? And what the majority said is, yes, that would be a use as well. But 924C requires a connection between that use and the predicate. And that's just absent in this Virginia statute. Can I ask you a question? So your argument must be, and the language is perfectly clear on this point, right? The predicate of your argument, I assume, is that we're in one of those cases where state law is so clear that you could commit this crime in a nonviolent way that we don't have to ask. We're not in that other bucket of cases where we ask, look, is there any reasonable chance that anyone is ever going to be prosecuted under this theory? That's right. And so the way that we look at this in applying the Duenas-Alvarez argument that the government has made is, first, does the text overlap with the force clause? For example, in Duenas-Alvarez, the defendant said, yes, this is a theft offense. And it could be considered under the immigration laws an aggravated felony, if I can finish. I'm about to go over my time. Right. But the California law has an idiosyncratic way of looking at attempted theft that falls outside of the generic offense. And so you get into that realm, that second bucket of cases, when there's already overlap by the text with the definition of a crime of violence, or in that case, an aggravated felony. And here, we don't even get there because there is no overlap with this offense and the force clause. It doesn't require the use of force against a person. It doesn't require use of force or the presentation of a firearm against another person. We cited Breeden, for example. And Breeden is a case where the defendant was convicted. I'll just finish on this. That the defendant was convicted of this statute, 18.2-53.1, with the use of the firearm directed at himself. And that establishes that under Virginia law, there is no overlap with a force clause because it doesn't require the display of the firearm against another person. May it please the court. I'd like to start with the point about Virginia robbery. And the first point would be when the Virginia Supreme Court decided this certified question from this court. The certified question was the scope of common law of Virginia robbery. Everyone agrees in this case that the Virginia General Assembly has changed the penalty provisions over the years in multiple ways. Most recently, the penalty provision scales the crime of robbery from all the way from a class 6 felony all the way up to a class 2 felony. Necessarily, that is a series of distinct crimes under Mathis. The Virginia Supreme Court also agreed that the General Assembly can change what the common law has provided. And so we know that the Virginia General Assembly has multiple times changed the penalty statute. We know that most recently, the penalty statute does create distinct crimes. And then as to these crimes in particular, which were committed after the amendment in 1975, the defendant has, and this is I think important, one argument and one argument only about how the threat to accuse someone of robbery fits within the statute that authorizes the punishment for robbery. And that is the only statute that authorizes punishment. We know from 18.2-16 that you have to have a statute that authorizes punishment to impose punishment for a crime in Virginia. And the one provision in Virginia law at the time of this defendant's crimes that he could spit sodomy threat theory is the language about a defendant who puts a person in fear of serious bodily harm. And there's just no way to accuse somebody of sodomy into putting a person in fear of serious bodily harm. This threat to accuse somebody of sodomy is a concern with a reputational harm. It is not a threat to put somebody in fear of serious bodily injury. As I understand the defendant's position as reply brief, the sole way that he thinks you can fit a threat to accuse somebody of sodomy within that phrase, putting a person in fear of serious bodily harm, is, well, they said that a threat to accuse somebody of sodomy is constructive violence. And therefore, if it's constructive violence, somehow that's got to be putting a person in fear of serious bodily harm. That's not right. Counsel, can I, I want to make sure I understand where you are in your argument. What if, I actually think this is sort of an interesting question because those old cases do seem to treat it as the equivalent of a fear of bodily harm. But what if I just assume, absolutely, the defendant in this case was sentenced under this penalty provision. Penalty provision only applies to what we think of as violent crimes. And so fine, this defendant was sentenced for a violent robbery. I just don't understand where that gets you because I don't see any evidence that at the time, or I guess even now, but certainly at the time pre-Apprendi, that the state was treating these as elements of a separate offense that had to be proven before a jury or admitted to an allocution. How do we know a judge didn't just make a finding? Oh yeah, it seems violent. Right. So I think the answer to that question is that as a matter of law, it was impossible to have punishment imposed for a threat to accuse sodomy, a threat to accuse someone of sodomy after the 1975 legislation. And that's true for a variety of reasons. But what if, but doesn't it have to be the case for this to work? I thought it would have to be the case that these penalty provisions were found, that the violent part of the penalty was found by a jury or defendant. Is that not right? It would be okay if the judge just found as a matter, found as a sentencing factor, this was violent? No, it's not a question about the fact finder. It is a question about can lawfully punishment be imposed for the sodomy threat theory? It cannot as a matter of law. And that is very clear. I don't think the defendant has an even colorable argument that if the 1975 statute does not cover a threat to accuse someone of sodomy, that you could punish someone. That is clear for multiple reasons. The first is 18.2-16, and this is a point the district court made, would preclude punishment for when the statute doesn't cover it. The only statute out here that could trigger punishment for robbery is 18.2-58. There isn't another one. The conduct here would not fall within 18.2-58. So under 18.2-16, there is no punishment available for that crime. Now, that's strange, but we know from the Virginia Supreme Court's opinion and Wackwitz that Virginia recognizes that in some sense you can have criminal liability out there and no available punishment. Now, as a matter of federal constitutional law and, indeed, Virginia law, it is also true as a matter of due process that you cannot punish somebody when you have failed to provide any kind of notice about what the punishment would be. And this court's case, United States v. Under Seal, citing a series of Supreme Court cases, makes that clear. You can also run this through Apprendi law if, as a matter of the statute at issue, there is no punishment available. And then you're going to impose, say, up to life imprisonment, the available punishment under 18.2-58 at the time. You'd have to meet the requirements of the statute that authorizes that punishment, and here the requirements would not be met. A defendant who came into court and said, you know what, the government agrees that a threat to accuse someone of sodomy does not constitute putting a person in fear of serious bodily harm. They agree with that. And yet, they're going to ask for a sentence with... I feel like I'm just having a conceptual problem here, and I will let it go in a minute. This may just be something I don't understand. But I feel like what you're trying to prove, so we must be able to figure out what this guy really did. We must know that the facts of this case don't involve a sodomy threat or he couldn't have been punished. But I don't understand how that's the question under the categorical approach. I thought we had to figure out, like we always do, we look at this penalty provision, are these just different means of committing common law robbery, or are they actually elements of a standalone offense? And there is no evidence here that they are elements of an offense because they don't get charged. We don't know. At least there are no Shepherd documents in this case indicating that they were charged to a jury. It just looks, when you look at it, like these are probably sentencing factors found by a judge. And so if we're doing the elements analysis under Mathis, I just don't see how any of this helps you. I feel like you are making a good, practical kind of common sense case that we can probably figure out what really happened in this case, but that's not the question. Well, I would disagree with that last point, which I think is critical, which is it is not a factual question. It is not a matter of going and looking at Shepherd documents. It is a matter of looking at the relevant state law provisions and saying, as a matter of law, you cannot be punished under that 1975 statute. Unless a judge finds that you did something violent. No, there is no way you can be punished under that statute for the sodomy threat theory. Put differently, the legislature eliminated a punishment scheme for that theory of robbery. It doesn't exist as an available method of proving. So then that's just white is wrong. I'm sorry? Then the Supreme Court of Virginia got that wrong in white. We got it wrong in white. And that's why the Virginia Supreme Court's Wachowicz opinion is really important. They say that this is a thing in Virginia where you can have a theory of criminal liability with no punishment. That's what happened with suicide. But that does mean that white was wrong because the Virginia Supreme Court said in white, oh yeah, you can totally commit this crime with a sodomy threat. And to your credit, your brief says you think white is wrong, but I don't know. I don't see how that helps us. But Your Honor, I think you're forgetting that. When the cases that the Virginia Supreme Court identified as endorsing the sodomy threat theory, Houston from 1890, Fleming, Maxwell, and the third is Falden. Those are from the 1890s and then the 1930s. At that time, there was a penalty provision in Virginia that would reach a sodomy threat theory. It had a 18.2-58 at that time. But the question wasn't back in the 1800s, what were the elements of common law robbery? It was today, what are the elements of common law? I disagree with that. The certified question was, what does Virginia common law robbery cover? They answered that question by going back to when they adopted English law, they thought common law robbery covered. And then in the intervening years, the Virginia General Assembly changed what is the authorized punishment scheme multiple times. That has consequences. The defendant's view is basically like, yeah, all those future legislative acts are basically a nullity. They didn't do anything to change Virginia robbery. That's just crazy. I mean, the legislation has very different wording, has very different penalty schemes. A defendant could not be subject to punishment under a expired penalty scheme. And so it just cannot be, as a matter of law, not as a matter of looking at facts, as a matter of law, that this punishment scheme could work. I mean, I sense that the court may not be agreeing with the government. So I want to belabor this point when there's also this available theory under 18.2-53.1. But I do think it's important because, number one, it's right. As a matter of law, you could not be punished after the 1975 legislation for threatening to accuse somebody of sodomy. That just is not a matter of putting a person in fear of serious bodily harm. That just doesn't fit that language. And let me briefly, before I go back to the firearm statute, say that the defendant's theory about how you fit within that language is that it constitutes constructive violence. If you look at what the Virginia Supreme Court cited for this concept of constructive violence, it cited William O'Donnell Russell's treatise, an old common law treatise. And it also has cited Lefebvre. And both of those treatises say what constructive violence means is just that's a different phrase for intimidation, which everyone understands. Robbery is committed through a use of force or intimidation. But that is, it's putting the rabbit in the hat to say that just using the phrase constructive violence then gets you around the very specific way that the 1975 version of 18.2-58 defines what is intimidation. And it gives you two things, it has, or three rather. Thing number one is assault. The defendant doesn't claim that they couldn't if you go and look at how Virginia has defined an assault. And remember this is assault in the context of seeking to overcome somebody's will. Then there's also a, you know, using a firearm or brandishing it or displaying a firearm. That is going to obviously exclude the sodomy threat theory. And then that's, you're left with putting a person in fear of serious bodily harm. And threatening to accuse somebody of sodomy simply is not putting a person in fear of serious bodily harm. I don't even understand how it could be that. So what the defendant is left with is at the time of his convictions, there was this theory of liability for which no punishment was authorized. And that's why his offenses do not count. And I mean, you can look that as a matter of Mathis, you could look at it also as a matter of this, you know, Duenas-Alvarez point about what is a realistic possibility. And if as a matter of law, no punishment could be imposed for a theory, that's compelling evidence that there is no reasonable possibility that that would be the crime. Against the backdrop too, where I would say that no one can point to any American case in the history of the United States where somebody actually was found guilty of robbery using the sodomy threat theory. It's an anachronism from the 1700s that has become irrelevant in American society. That's why the White decision was so surprising. But I just don't understand how on common law robbery, we are in the bucket of cases where we say, is there any element? And they told us, like, I don't think at this point we can say, yeah, that seems sort of far-fetched. Right. But Your Honor, the Virginia Supreme Court answered the question about how they define Virginia common law robbery. And they said that, by the way, under our law, and they're absolutely correct about this, that the General Assembly can modify what the common law standard is. And everyone agrees that the General Assembly has repeatedly changed the punishment scheme. And so, I mean, what I find kind of hard to wrap my head around here is that if we are not applying the categorical approach, and we had a defendant who was convicted under that 1975 statute using the sodomy threat theory, I have no doubt, and it would be absolutely correct, the court would say, there's no punishment authorized that violates 18.2-16. It violates due process principles. It violates apprendee principles, because if you are going to use a theory of punishment that's covered by the statute, it would have to fall within it. And so, but let me go on to the, you know, the firearm statute, because I think the firearm statute is kind of the final nail in the coffin here for this defendant, which is, as Judge Quattlebaum was pointing out, you have to prove, and the defendant agrees with this, the predicate robbery offense for the Virginia firearm statute. So, all those elements of Virginia robbery have to be satisfied. The only way that Virginia robbery doesn't count is via the sodomy threat theory. So, to get the firearm offense within the elements clause, the one and only thing that the firearm elements have to do is take you outside of the sodomy threat theory. It's, you know, functionally very similar to what I'm saying about the penalty statute for Virginia robbery. It just happens to be now we are clearly talking about a different crime. Does it narrow and exclude the sodomy threat theory? And the answer to that is yes. Number one, you're talking about a crime where the defendant is going in, intending to steal something, seeking to overcome the defendant's will, has a firearm, uses or displays it. When all of those things are added up together, you have met the elements clause, even if the defendant happens to have this, you know, I'm accusing you of sodomy thrown in there. Indeed, you know, realistically, that would be such a bizarre scenario. I think any real person would be, like, terrified because the robber would seem unhinged. I mean, you're using a gun, say, to scratch your head. I mean, that's just, that's madness. I mean, who knows what somebody like that would do? And one fine-grained point, I think I heard my friends say, yeah, but, you know, maybe the um, that's a new argument, not in the briefs. And I would say basically it's answered by this court's opinion in McNeill, which dealt with federal bank robbery. And in McNeill, bank robbery, federal bank robbery has this, like, objective standard. How would the victim understand the, you know, circumstances in a threat scenario? And the argument was, well, because you use that standard, it must be that this is not, you know, an intentional use of force. You got a problem under Borden because, like, the intimidation could occur, like, recklessly. And McNeill, back in 2016, when, you know, before Borden, this court agreed with that recklessness offenses are out, said, no, that's not right. Because the basic idea is that you have to know that you are intimidating people. And that is definitely going to be the case in all of these robbery crimes, because that's how you, that's the dividing line between larceny and robbery. And that's enough to get you to satisfying any kind of recklessness problem. So, which is a long-winded way of saying it does meet the elements clause to go and threaten to accuse somebody of sodomy as a way to, you know, you're intending to get stuff from them against their will and scratch your head with a gun. That's intimidating. Can I ask you a question? I'm trying to figure out, and I asked her colleague this too, sort of, which bucket we're in here, whether this is, are we in the bucket where you would ask whether, like, come on, is there any reasonable chance anyone is going to be charged under these hypothetical scenarios? Or are we under the bucket where, look, the language says what it says, and I can imagine a circumstance where someone uses a gun to break and enter, then puts the gun away, nobody ever sees it, and decides, you know, I'm not going to use the gun, I'm going to use the sodomy threat to commit my robbery. If I can imagine that consistent with the language, I mean, is this just one of those cases where the categorical approach takes you somewhere that maybe doesn't exactly overlap with common sense, or is this the kind of case where the language is sufficiently unclear, there's something sufficiently unclear here that we can ask, is this a reasonably foreseeable kind of charge? It's the last scenario that you were referring to where the language does not definitively answer this. The cases in Virginia about this statute definitely do not endorse a used or attempted to use or display the firearm in a threatening manner. I think implicitly he's conceding that the display of the firearm in a threatening manner is a problem for him, that's going to satisfy the elements clause. And so it's just that somehow the used or attempted to use, which is accompanied by this displayed in a threatening manner, would reach scenarios that would fail to satisfy the elements clause. I don't think there's support in the Virginia cases to say that. Well, what about his example? What about you use the gun to break and enter, to trespass onto the property, put the gun away, now you commit the robbery by threatening to accuse someone of sodomy. I don't see any case that says that that's right, that you could rely on such a theory. What's wrong? I really want to make sure I understand this. You're saying you think that goes outside use as that word is used in this statute. I do, but also can't lose sight of the really important point here that makes this an easier case, that we are now talking about robbery having to be proven as the predicate here. And so it has to fit within the elements of are going to require that you are directing your intimidation at the person. That's the part where you're threatening to accuse them of sodomy. Right, but you also have to have a gun and use it. So are you suggesting that the using it to trespass and putting it away and not using it again? Right. That's not wrong. Well, in the context of a crime where you have to during the overcoming of the will, basically, I think is the way this is going to shake out, have to have intimidated the person. And so you have to have the gun. I mean, a different way to come at this is more simply that the I don't think there's a definitive answer in this statutory language. The realistic possibility of language still has, you know, force in this context as a. I mean, Taylor emphasized kind of the federalism comedy angle on it, and that would be directly applicable here about where you're saying, well, there could be the sodomy threat theory and somehow the person has to have a gun that they use and it is not a use that contributes to the overcoming the will, even though it has to occur during the robbery. That's just far fetched. And the whole point of having this exception when you're dealing with the state crime for realistic possibility is directly at play there. I see that my time is up. I don't want to wear up my welcome. Thank you. Mr. Kamen. Again, where I started with respect to robbery, the question for the court is what are the elements are and has said that the punishment statute does not define those elements. That's on page 484 of the Virginia Supreme Court's opinion. The Virginia Supreme Court also said that a threat of intimidation that includes a threat of accusing the victim of engaging in sodomy inspires as great a degree of fear as the threat of personal violence. And so it is clear under the statute that it is encompassed by this punishment statute 18.258, which was amended in 1875 to include not only commission of the offense by violence, but also putting the victim in fear. Last point, the government says it's impossible to commit this offense and be punished by 18.258 with the sodomy threat theory. And that assumes that 18.258 provides mandatory penalties. And my friend provided zero response to the argument that these punishments are not mandatory and may be suspended by the trial judge. And that means that they fall outside of the argument of Elaine and Apprendi that they constitute elements of the offense. The elements of common law robbery, which is the offense that Mr. Williams was convicted of, includes nonviolent means as a categorical matter. And that is the offense of a conviction. And it doesn't satisfy 924E's that statute requires the use of the firearm or the display in a threatening manner to be used to accomplish the violence and intimidation of the predicate robbery offense. That's what my friend has argued, that it necessarily requires the use of the firearm or the display in a threatening manner to occur at the time or to accomplish the elements of robbery for violence and intimidation. But that is nowhere in Virginia's statutory text. All it requires is that the firearm be used, which is defined by Rose v. Commonwealth as to employ. It does not require that use to occur to accomplish the violence or intimidation for the predicate offense. And we've cited Rowland v. Commonwealth, the Virginia Supreme Court case. Now, the predicate in that case is in vacating the defendant's conviction under this statute, 18.2-53.1, said there's no evidence that during the burglary, which was the engaging in coming into the restroom, there's no evidence that the defendant used the firearm or threatened or displayed the firearm in a threatening manner when entering the restroom. And they said that was it. That's the burglary. It wasn't done during that offense. Therefore, they vacated the conviction. Now, the government also does not respond to our site of Briley v. Commonwealth on page 18 of our reply brief, which says, black letter, Virginia law, that in a robbery prosecution where the violence against the victim and the trespass to his property combined in a continuing unbroken sequence of events, the robbery itself continues as well for the same period of time. It is a continuing offense. It is not simply defined by the time period that an individual uses violence or intimidation to accomplish the taking. It starts at the beginning of the trespass and ends when the property is taken away from the victim's property. Therefore, the government cannot establish that the statutory text in this case requires the use of a firearm or the display in a threatening manner against a We had a new response about boredom and implicit threats. That is that when an individual uses a firearm to threaten themselves, and the government responded in its reply brief that that would implicitly result in a threat of harm to the victim. Our reply brief in responding to the government's argument, so it was not new, was boredom. That is that to be a violent felony, the government has to establish that these elements require intentional use of force, not against another person, not simply the implicit reasonable fear that might happen in a victim when an individual threatens self-harm, but intentional use or directed violence against a victim. And this statute allows for it to be satisfied through threats of self-harm. And we've identified a Virginia case, Breeden, which establishes that point. And the statutory text makes that equally clear. This is not a statute like the court looked at in Burns-Johnson, which is another firearm during an armed robbery statute. Counsel, on the intentional issue that you say boredom requires, boredom left open the reckless disregard conduct. And we've since determined that reckless disregard constitutes you know, satisfies the board. It is not precluded and constitutes a crime of violence. The language was extreme recklessness. Yeah, maybe right. Yeah, thank you. Does that, does putting a gun to your head constitute extreme recklessness that falls with under our decision there? I think the question is, do these statutory elements require a showing of extreme recklessness directed at a victim? This statute doesn't require anything directed at a victim. It can be towards property. Yeah, but your example of self, threat of self-harm is what I'm getting at. Does the threat of self-harm that you say is an exception to how this can be used as a threat against another? I think it's our Manley case. I can't remember. Does it fall under the extreme recklessness of Manley? If I can respond, I'm over my time. The answer is no, because these elements don't require that mens rea of extreme recklessness, even if the court might consider, well, it's, if you engage in self-harm, that could potentially result in extreme recklessness. The question is, do the elements of the offense, the elements don't. They don't even require anything directed at a person. For those reasons, we'd ask the court to vacate the judgment below and remain for the direction for the district court to grant the 2255. Thank you, Mr. Cameron and Mr. Cook for your arguments. Appreciate you being here. Wish you well. Stay safe. Thank you. We'll proceed to the next case.
judges: Roger L. Gregory, Pamela A. Harris, A. Marvin Quattlebaum Jr.